**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LINNETTE O.,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | **NO. 25-cv-2082** |
| | : | |
| **FRANK BISIGNANO,** | : | |
| **Commissioner of Social Security,** | : | |
| **Defendant.** | : | |

**MEMORANDUM OPINION**

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE** **August 25, 2026**

Linnette O. (Plaintiff) brought this action seeking review of the Commissioner of Social Security Administration's (SSA) decision denying her claim for Social Security Disability Insurance (SSDI) benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433 (the Act). This matter is before me for disposition upon consent of the parties. For the reasons set forth below, Plaintiff's Request for Review (ECF No. 11) is **GRANTED**.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed the instant application for disability benefits on April 22, 2021, alleging disability beginning May 1, 2018, due to "cancer in right leg, stage unknown." (R. 332-38, 385). Her application was denied at the initial level on June 28, 2021, and upon reconsideration on October 6, 2021. (R. 124-30, 136-45). She thereafter requested a hearing before an Administrative Law Judge (ALJ). (R. 146-48). On June 6, 2022, Plaintiff, represented by counsel, and a vocational expert testified at the administrative hearing. (R. 38-55). On June 14, 2022, the ALJ issued a decision unfavorable to Plaintiff. (R. 94-115). Following Plaintiff's request for review, the Appeals Council vacated the decision and remanded the case to the ALJ

on May 30, 2023. (R. 116-23). On February 14, 2024, the ALJ held a second administrative hearing at which Plaintiff, represented by counsel, and a vocational expert (VE) testified. (R. 56-72). On April 19, 2024, the ALJ issued another decision unfavorable to Plaintiff. (R. 16-37). Plaintiff again appealed, and the Appeals Council denied Plaintiff's request for review on March 21, 2025, thus making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. (R. 1-6).

On April 4, 2025, Plaintiff filed a complaint in this Court. (Compl., ECF No. 1). She consented to the jurisdiction of the Honorable Elizabeth T. Hey, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c) on April 7, 2025. (Consent, ECF No. 6). On October 22, 2025, Plaintiff filed a Brief and Statement of Issues in Support of Request for Review. (Pl.'s Br., ECF No. 11). The Commissioner filed a Response on November 19, 2025, (Resp., ECF No. 12).

This case was reassigned to me on April 21, 2026, and Plaintiff consented to my jurisdiction pursuant to 28 U.S.C. § 636(c) on May 15, 2026. (Order, ECF No. 13; Consent, ECF No. 16). This case is fully briefed and ripe for disposition.

## II. FACTUAL BACKGROUND

The Court has considered the administrative record in its entirety and summarizes here the evidence relevant to the instant request for review.[1]

Plaintiff was born on September 19, 1982, and was 38 years old on the amended alleged disability onset date. (R. 24, 332). She completed high school. (R. 45, 385). Her past relevant work includes work as a warehouse packer from September 2015 to February 2021. (R. 386).

---

[1] Plaintiff's claim implicates only her desmoid fibromatosis of the right lower extremity. (*See* Pl.'s Br., ECF No. 11, at 2-8; *see also* R. 24 (finding this affliction to be her lone severe impairment)). Accordingly, the Court addresses only the evidence relating to this condition.

**A. Medical Evidence**

Plaintiff has experienced pain and swelling of her right lower leg since at least early 2018. (R. 457). After an MRI showed "a lobulated 9 x 5 x 2 cm mass in the soleus muscle displacing but not involving the tibia [nerve] bundle," Plaintiff underwent a biopsy on June 7, 2018 and was diagnosed with desmoid fibromatosis with "no evidence of malignancy." (R. 785-86, 889; *see also* R. 892 ("Pathology result from biopsy states that lesion is not worrisome for malignancy.") (emphasis omitted)). Plaintiff was started on tamoxifen and Mobic (meloxicam), and by March 2020 the mass had shrunk by approximately 20 to 30 percent, her symptoms had stabilized, and her functional status had improved, allowing her to work full-time. (R. 678).

One year later, Plaintiff continued to have a burning sensation in her right calf and heel. (R. 557). She reported difficulty at her job because she was not permitted to sit. (*Id.*). An MRI showed an "[i]nterval increase in size of 5.6 x 1.7 x 5.4 cm irregular mass within the soleus musculature," although these measurements still represented an "overall decreased . . . size" since her first MRI. (R. 591). The new MRI also showed "likely additional areas of desmoid fibromatosis," as reflected by the growth of "at least three homogeneously enhancing nodules more superiorly along the fascia and within the medial soleal musculature with increase in adjacent increased T2 signal/edema." (*Id.*). In light of this "mild progression" and her ongoing pain when standing for any duration, on July 21, 2021, Plaintiff's oncologist, Suresh Nair, M.D., of the Lehigh Valle Cancer Institute, stopped her tamoxifen and Mobic and started her on sorafenib. (R. 588, 591). On August 4, 2021, Dr. Nair offered that Plaintiff's chronic right calf pain "makes it impossible to do her factory work." (R. 616).

In the meantime, on June 21, 2021, Ziba Monfared conducted a consultative medical examination of Plaintiff. (R. 1225-40). She noted that Plaintiff self-reported "cancer" of an unknown type and stage in her calf, first diagnosed in 2019. (R. 1225). Plaintiff was taking

tamoxifen but had not undergone any surgical treatment, radiation or hospitalizations. (*Id.*). Plaintiff rated her pain as eight-out-of-ten. (*Id.*). Her activities of daily living included cooking, cleaning, laundry shopping, childcare, personal care, watching television and listening to the radio. (R. 1226). She denied driving, despite maintaining a license. (*Id.*). Upon examination, she was in no acute distress, had a normal gait and stance, did not use an assistive device, could walk on heels and toes for a few steps without difficulty, and was able to change into a gown, get on and off the examination table, and rise from a chair on her own. (*Id.*). However, she could only squat halfway due to right calf pain. (*Id.*). Her extremities appeared normal with no cyanosis, clubbing, edema or muscle atrophy evident. (R. 1227). Dr. Monfared rated her prognosis as fair. (R. 1228).

In the attached Medical Source Statement of Ability to Do Work-Related Activities (Physical), Dr. Monfared opined that Plaintiff could frequently lift and carry up to 10 pounds and operate foot controls bilaterally; occasionally lift and carry up to 20 pounds and perform all postural movements (except crouch, which she could never do); sit for eight hours at a time; and stand and walk each for one hour at a time or four hours in an eight-hour workday. (R. 1229-32). She also indicated that Plaintiff could perform all activities listed on the form, such as shopping, traveling alone, using public transportation and walking at a reasonable pace on an uneven surface. (R. 1234). Plaintiff's range of motion in all tested joints, including her knees and ankles, was within normal limits. (R. 1236-37).

On June 25, 2021, State agency medical consultant Robert Czwalina, D.O., opined that Plaintiff could push and pull without limitations; frequently lift and/or carry 10 pounds, balance and stoop; occasionally lift and/or carry 20 pounds, kneel, crawl, crouch and climb ramps and stairs; stand and/or walk for four hours and sit for six hours; but never climb ladders, ropes and scaffolds. (R. 79-80). Upon reconsideration on October 6, 2021, State agency medical

consultant Paul Smith, M.D., reached the same conclusions, except he determined that Plaintiff could balance and stoop without limitation; occasionally climb ladders, ropes and scaffolds; and frequently engage in all other postural maneuvers. (R. 90). Additionally, he concluded that Plaintiff could not push and pull with her lower extremities. (*Id.*).

In November 2021, Plaintiff was clinically stable and tolerating the sorafenib well with decreased pain despite ongoing swelling in her calf. (R. 1273, 1276). Dr. Nair re-prescribed gabapentin. (R. 1276). An MRI the following month showed a "[s]imilar appearance" of the main mass plus multiple small nodules, all consistent with her desmoid fibromatosis diagnosis. (R. 1333). She was noted to be "stable symptomatically" with "less induration posteriorly" of the right calf and "[o]verall doing well and tolerating sorafenib without side effect." (R. 1304). By the end of March 2022, Plaintiff had only mild swelling, with no changes in how the mass felt, and had stopped taking gabapentin, which was interpreted by Dr. Nair as a possible sign that her pain had decreased. (R. 1330, 1333).

After a podiatry visit on April 20, 2022, Plaintiff was treated on May 19, 2022, at St. Luke's Lehigh Primary Care in Allentown for a "hard tender mass in her right medial ankle." (R. 1394). An x-ray was normal, but an MRI showed a "1.4 x 0.6 x 1.2 cm enhancing solid tumor arising from the flexor retinaculum" abutting the posterial tibial artery and vein, although the tibial nerve and its branches were "not directly contacted by the mass." (R. 1394). It was noted that the mass appeared similar to others in the right soleus muscle and was thus "very likely also [a] desmoid tumor." (*Id.*). Plaintiff described the associated pain as "very severe," like "walking on rocks," and indicated that it caused pain in her feet, shin and calf while walking, although she denied numbness or a burning sensation. (*Id.*). Myofilament testing was also normal bilaterally. (R. 1396). Plaintiff was directed to follow up with podiatry and hematology/oncology. (R. 1393).

On May 26, 2022, Dr. Nair drafted a letter[2] to an unspecified recipient indicating that Plaintiff was recently discovered to have a second fibromatosis in her right ankle. (R. 1407). He added that her condition had stopped responding to therapies and that he was referring her to another physician for possible participation in clinical trials. (*Id.*). He claimed that due to Plaintiff's worsening pain and swelling, she "is unable to work." (*Id.*).

A June 1, 2022 MRI showed a "decrease in internal intermediate T2 signal enhancement within the ill-defined T2 hypotense mass along the fascial planes and within the soleus muscle, and similar to mild decrease in size of and internal intermediate T2 signal enhancement within at least 3 nodules superior to main mass." (R. 1682). Another MRI on December 6, 2022 showed a few cellular foci had "decreased" while others remained "unchanged," with an "otherwise unchanged size and extent of multifocal predominantly collagenous desmoid tumor." (R. 1694). At a July 18, 2022 appointment with oncologist Ciara Kelly, M.D., of Memorial Sloan Ketting Cancer Center, it was noted that although the tumor had not grown since starting sorafenib, Plaintiff continued to report pain and swelling "when on her feet for a prolonged period of time, works in warehouse – on her feet 10hr per day[.]" (R. 1683). Upon examination, she had intact strength and no edema in the right lower extremity but "subtle firmness" in the calf posteriorly and in the distal aspect. (*Id.*). The following month she reported "[b]urning pain – rated 8/10 all the time," for which she was taking gabapentin and Advil. (R. 1692).

On September 6, 2022, Dr. Kelly drafted a to-whom-it-may-concern letter[3] stating that for the last four years Plaintiff had suffered from desmoid tumor and that although it was benign, it could still be "locally aggressive" and cause pain and swelling, which were exacerbated by

---

[2] The contents of this letter are set forth in full in § V.

[3] The contents of this letter are set forth in full in § V.

standing for lengthy periods. (R. 1412). Dr. Kelly observed that Plaintiff had been taking sorafenib for the last year but continued to have symptoms. (*Id.*).

**B. Nonmedical Evidence**

The record also contains nonmedical evidence. On May 9, 2021, Plaintiff, with the assistance of her husband, completed an Adult Function Report. (R. 398-407). She indicated therein that she has a desmoid tumor in her right leg that causes "burning pain," inflammation, a limp and disrupted sleep "sometimes." (R. 398-99, 403). She described daily activities of caring for her son, taking him to daycare, meal preparation, watching television, attending church weekly, socializing and performing some house chores like weekly cleaning and twice weekly laundry. (R. 399-402). Her condition did not impact her personal care, but she claimed that it affected her ability to lift, squat, bend, stand, walk, kneel, climb stairs and complete tasks. (R. 399, 403).

Plaintiff testified at the June 6, 2022, administrative hearing that she stopped working as a packer in a Walmart warehouse due to pain and inflammation in her leg caused by a tumor. (R. 43). Since that time, she spends her days doing house chores, including taking her small child to daycare, cooking and cleaning. (R. 45-46). She is able to drive, but only on a limited basis. (R. 46, 49). However, she claimed that some days she must remain seated with her leg elevated for 20 minutes at a time for five to six times because otherwise it becomes numb. (R. 46-47, 49). Plaintiff can stand for up to two hours and does not require an ambulatory device, although she "sometimes . . . limp[s] a little bit." (R. 46, 48). She takes pain medication, but her condition still impacts her sleep. (R. 48-50). The medication also causes her to have to use the bathroom four or five times daily. (R. 49).

Plaintiff also testified briefly at the February 14, 2024 hearing. She indicated that her pain had worsened and was now "very strong" and "constant" and that she had started using a

cane when she had "a lot of pain." (R. 62-63). She reported that "the only thing that does help a little bit" was elevating her leg. (R. 63). Swelling was between her knee and ankle and sometimes made wearing socks painful, although she could still wear stretch pants or leggings. (R. 64). She reiterated that she could not stand "for a long period of time" and that her pain interfered with her sleep, causing her to nap during the day. (*Id.*). Plaintiff again complained that her medication made her have to use the restroom more frequently. (R. 65).

## III. ALJ DECISION

Following the administrative hearing, the ALJ issued a decision in which she made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2027.
2. The claimant has not engaged in substantial gainful activity since March 19, 2021, the amended alleged onset date (20 CFR 404.1571 *et seq.*).
3. The claimant has the following severe impairment: desmoid fibromatosis of the right lower extremity (20 CFR 404.1520(c)).
4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except sit up to 8 hours; walk for 4 hours and stand for 4 hours each at 1-hour intervals; occasionally perform postural maneuvers; no climbing ladders, ropes, or scaffolds; no exposure to unprotected heights;

occasionally climb ramps and stairs; no use of foot controls; and no push/pull with the lower extremities.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on September 19, 1982 and was 38 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 19, 2021, through the date of this decision (20 CFR 404.1520(g)).

(R. 22-32). Accordingly, the ALJ found Plaintiff was not disabled. (R. 32).

## IV. LEGAL STANDARD

To be eligible for benefits under the Social Security Act, a claimant must demonstrate to the Commissioner that she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382c(a)(3)(A). A five-step sequential analysis is used to evaluate a disability claim:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, then the

> Commissioner considers in the second step whether the claimant has a "severe impairment" that significantly limits [her] physical or mental ability to perform basic work activities. If the claimant suffers a severe impairment, the third inquiry is whether, based on the medical evidence, the impairment meets the criteria of the impairment listed in the "listing of impairments," . . . which result in a presumption of disability, or whether the claimant retains the capacity to work. If the impairment does not meet the criteria for a listed impairment, then the Commissioner assesses in the fourth step whether, despite the severe impairment, the claimant has the residual functional capacity to perform [her] past work. If the claimant cannot perform [her] past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. § 416.920(a)(4). The disability claimant bears the burden of establishing steps one through four. If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner at step five to establish that, given the claimant's age, education, work experience, and mental and physical limitations, she is able to perform substantial gainful activities in jobs existing in the national economy. *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

Judicial review of a final decision of the Commissioner is limited. A district court is bound by the factual findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence is "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118 (3d Cir. 2000) (citations omitted). Even if the record could support a contrary conclusion, the decision of the ALJ will not be overruled as long as there is substantial evidence to support it. *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986). The court has plenary review of legal issues. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).

## V. DISCUSSION

Plaintiff raises a single claim that the ALJ erred in determining that she was not disabled. (Pl.'s Br., ECF No. 11, at 2). Upon closer inspection, the substance of this claim is that in formulating her RFC the ALJ should have credited the opinions of her treating oncologists, Drs. Nair and Kelly, over that of the consultative examiner, Dr. Monfared. (*Id.* at 5-8).

Specifically, Plaintiff contends that Dr. Nair's and Dr. Kelly's May 26 and September 6, 2022, to-whom-it-may-concern letters, respectively, constituted opinion evidence under the regulations that the ALJ was required to substantively address as set forth in 20 C.F.R. § 404.1520c.[4] (Pl.'s Br., ECF No. 11, at 2-8). In the body of his letter, Dr. Nair wrote:

> I am writing it [sic] regards [sic] to patient listed above. Patient is seen regularly at our office at the Lehigh Valley Cancer Institute. She was recently found to have a second fibromatosis in her right ankle. Her disease is no longer responding to previous therapies, including Tamoxifen and Sorafenib. Patient will be referred to Dr. Gounder at MSK to further evaluate disease and consideration for clinical trials. Due to her progressing disease, patient is experiencing worsening pain and edema. Due to her diagnosis and symptoms from her disease, patient is unable to work. Please contact our office with any questions or concerns regarding this matter. Thank you so much for your time.

(R. 1407).

And Dr. Kelly wrote:

> [Plaintiff] is a patient under my care at Memorial Sloan Kettering

[4] 20 C.F.R. § 404.1520c governs how the SSA must consider and articulate medical opinions. Specifically, when evaluating medical evidence, the most important factors are whether the opinion is supported with relevant objective medical evidence and explanations and its consistency with other evidence from medical and nonmedical sources, and the ALJ must explain how he or she considered these factors for a medical source's medical opinions or prior administrative medical findings in the determination or decision. 20 C.F.R. § 404.1520c(a)-(c). The remaining factors include the medical source's relationship with the claimant, the medical source's specialization, and other factors that tend to support or contradict the medical opinion. *Id.* at § 404.1520c(c). An ALJ, in her discretion, need only reference these other factors if she finds that two medical opinions about the same issue are equally persuasive, well-supported, and consistent with the record evidence. *Id.* at § 404.1520c(b)(3).

> Cancer Center. She was last evaluated on 8/29/2022. [She] has a diagnosis of desmoid tumor which is a benign tumor that unfortunately can be locally aggressive and cause symptoms not limited to pain and swelling. Systemic therapy is utilized to try to mitigate this.
>
> [She] has been living with this tumor for four years and suffering from its effects. She has been on sorafenib for the last year although she continues to have neuropathic pain and swelling which are exacerbated by standing for long periods of time.
>
> Please take [her] diagnosis, condition and treatment into consideration when considering her for disability. Do not hesitate to reach out to our office with any further questions or concerns.

(R. 1412).

Although the ALJ noted that she had reviewed and considered these submissions as part of the evidentiary record, she declined to analyze them further because statements regarding a claimant's ability to work are not considered inherently useful in determining disability. (R. 30 (citing 20 C.F.R. § 404.1520b(c))). However, Plaintiff maintains that greater consideration was required because the statements were fully consistent with her desmoid fibromatosis diagnosis and symptoms resulting in problems standing, walking and sitting. (*Id.*). Additionally, she contends that more discussion was warranted because the documents were supported by their authors' clinical findings and reviews of relevant diagnostic studies. (*Id.*). The Commissioner counters that the ALJ properly disregarded the letters and accuses Plaintiff of merely seeking a reweighing of the evidence. (Resp., ECF No. 12, at 5-7 (citations omitted)). He asserts that the ALJ considered all the record evidence (including Drs. Nair's and Kelly's letters), gave Plaintiff the benefit of the doubt as to the limiting effects of her desmoid fibromatosis, and restricted her exertional level, ability to sit/stand/walk, postural maneuvers, exposure to unprotected heights, and use of foot controls. (*Id.* at 7- (citing R. 26, 30)). Nonetheless, after considering the VE's testimony, she concluded that Plaintiff did not meet the Act's definition of disabled. (R. 32).

20 C.F.R. § 404.1520b(c)(3) provides that "[s]tatements on issues reserved to the Commissioner" constitute "[e]vidence that is inherently neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c)(3). These issues include any for which the SSA is "responsible for making the determination or decision," such as statements that the claimant is or is not "disabled, . . . able to work, . . . able to perform regular or continuing work," or able to perform past relevant work, or whether or not he or she has a severe impairment or an impairment that meets the duration requirement. *Id.* § 404.1520b(c)(3)(i)-(iii), (vi). For all such issues, the SSA "will not provide any analysis about how [it] considered such evidence in [its] decision, even under § 404.1520c[.]" *Id.* § 404.1520b(c); *see Taylor v. Comm'r of Soc. Sec.*, No. 24-2940, 2025 WL 1732927, at *1 n.4 (3d Cir. June 23, 2025) ("Because these statements [regarding the claimant's severe impairment and inability to work] were reserved solely for the Commissioner, the ALJ was not required to provide any analysis."). This section, in turn, sets forth consideration and articulation requirements for "medical opinions." *Id.* § 404.1520c. Pursuant to § 404.1513(a)(2), "[a] medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in [certain enumerated] abilities[,] . . . such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching)," among several others. *Id.* § 404.1513(a)(2)(i).

In this case, the ALJ properly disregarded the letter from Dr. Nair, but not the one from Dr. Kelly. In his letter, Dr. Nair declared that "[d]ue to her diagnosis and symptoms from her disease, patient is unable to work." (R. 1407). But the regulations reserve this issue to the Commissioner. *Id.* § 404.1520b(c)(3). The remainder of the letter sets forth Plaintiff's diagnosis, symptoms and treatment history and plan, but nowhere does it address "what [she] can

still do despite [her] impairment(s)." *Id.* § 404.1513(a)(2)(i); (*see generally* R. 1407). Thus, it does not meet the regulatory definition of a "medical opinion," and the ALJ was not required to articulate her consideration of its contents. 20 C.F.R. § 404.1520b(c).

Conversely, Dr. Kelly did not purport to tell the SSA how to rule on Plaintiff's claim. Rather, she requested only that the SSA "[p]lease take [Plaintiff's] diagnosis, condition and treatment into consideration when considering her for disability." (R. 1412). Critically, although Dr. Kelly (like Dr. Nair) also discussed Plaintiff's diagnosis, symptoms and treatment history, she further opined on Plaintiff's capacity for "standing for long periods of time," which she noted worsened Plaintiff's neuropathic pain and swelling. (*Id.*). Yet the ALJ failed to address this portion of Dr. Kelly's opinion regarding Plaintiff's remaining functionality in light of her impairment. *See* 20 C.F.R. § 404.1513(a)(2)(i).

Accordingly, the Court remands this matter for consideration of Dr. Kelly's opinion pursuant to 20 C.F.R. § 404.1520c.[5]

## VI. CONCLUSION

For the reasons set forth above, Plaintiff's request for review is **GRANTED**. This matter is remanded for further proceedings consistent with this memorandum.

BY THE COURT:

/s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge

---

[5] This Court offers no view at this time as to whether the ALJ appropriately analyzed Dr. Monfared's opinion under § 404.1520c. Because one of the two key factors in reviewing a medical opinion is its consistency with other medical opinions, but here the ALJ disregarded Dr. Kelly's opinion on an improper basis, it is unclear whether her finding that Dr. Monfared's opinion was consistent with the other medical evidence accounted for Dr. Kelly's opinion.